HARTLEY, *Appellant*, v. HARTLEY.

Division Two, March 15, 1898.

**Equity:** FINDINGS OF CHANCELLOR.  The rule that in equity cases where the evidence is oral the finding of the chancellor will be deferred to by the Supreme Court unless he has manifestly disregarded the evidence, though not an absolute one, is usually adhered to.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*W. W. Fry* for appellant.

(1)  This being a suit in equity this court will review the entire evidence and determine the cause on the weight of the evidence.  *Thomas v. Railroad*, 49 Mo. App. 110; *Bush v. Arnold*, 50 Mo. App. 8; *Benne v. Schnecko*, 100 Mo. 250.  (2)  We insist that under the evidence in the case the verdict should be for plaintiff.  All the evidence is before the court and on a careful consideration of it we can see no other conclusion than that defendant be required to pay plaintiff at least the amount of the due bill, $750, and the value of

one half of the property in Sparks' addition, which value was $1,600 and we believe a ruling on the weight of the evidence will dispose of the case.

*George Robertson* for respondent.

(1) There is only one question in the case, and that is, whether the evidence of the plaintiff or that of the defendant shall be believed. The witnesses were all before the chancellor in person. He heard them, and saw them upon the witness stand, observed their manner and demeanor and concluded in favor of the truth of the defense. The one who saw and heard the witnesses as they gave their testimony is the one best qualified to judge of the truth of their statements. (2) It is well settled in this State that the finding of the chancellor will be deferred to by the appellate court, unless he has manifestly disregarded the evidence. *Spell v. Harrison*, 83 Mo. 65; Beach's Modern Eq. Prac., sec. 97.

BURGESS, J.—This is an equitable proceeding by the father against his son instituted in the circuit court of Audrain county for an accounting and judgment for whatever sum may be found due plaintiff as the result. The trial resulted in a judgment for defendant, and plaintiff appealed.

Plaintiff alleges in his petition that defendant converted to his own use moneys and notes belonging to plaintiff amounting to $3,784.65, and that in 1892 he gave to plaintiff a due bill for $750, for a portion of said indebtedness, which defendant thereafter took possession of to keep for him upon the promise that he, defendant, would take care of him during his lifetime, and that afterward in August, 1892, he drove plaintiff from his home, and has since failed to support and care for him. It was also averred in the peti-

tion that in April, 1891, plaintiff was the owner of lot 3 and the west half of lot 2, block 1, in Rawlings addition to the city of Mexico, worth $600, and at that date defendant represented to plaintiff that he desired to purchase lot number 16 of Sparks addition to said city, and proposed that if plaintiff would convey to defendant plaintiff's said real estate so he could raise money upon it to aid him in purchasing said lot number 16 that defendant would have said lot number 16 conveyed to plaintiff and defendant jointly. That plaintiff relying upon said representation agreed to and did convey said property to defendant in consideration of $600, which defendant afterward sold to one Tucker for $600, and on the eighteenth day of April, 1891, purchased said lot number 16 and took a deed to the same in his own name instead of the plaintiff's, which fact plaintiff did not discover until shortly before the institution of this suit.

Defendant by answer denied that he converted to his own use any of the notes or moneys of plaintiff, or any of plaintiff's property; denied that he owed plaintiff anything, and averred that he had accounted to plaintiff, and that in April, 1892, he and plaintiff had a full settlement of all transactions between them, and that defendant at that time gave plaintiff a note for the balance due him, which has been paid. The answer also denied generally all other allegations in the petition.

In 1885 plaintiff owned a farm in Audrain county consisting of one hundred and sixty acres, upon which he lived with his family. He was the father of five children, three daughters and two sons. One of the sons is the defendant in this suit. The other son's name was William. Plaintiff was twice married, and William was the only child by the last wife. Plaintiff being indebted to his daughters, and his son, Leslie,

for property of theirs which he had theretofore used; in
1885 he deeded to them the farm in payment of that
indebtedness.   At the time plaintiff moved to Mexico,
Missouri, he claims to have had about $3,000, but it
appears from the testimony that this was an over esti-
mate, and that he did not have more than $1,000, the
principal part of which he invested in real estate in
that city.   William Hartley's mother died sometime
prior to 1890, leaving as her separate property about
$600 or $650 in money, which the plaintiff appropri-
ated to his own use.   During that year William de-
manded of his father this money.   His father was
unable to pay it, and at his request defendant paid the
amount $650 to William, and took a deed from plain-
tiff to a piece of real property in Mexico worth about
$500, which plaintiff then owned.   Plaintiff testified
to the execution and delivery to him by defendant of
the due bill for $750, as alleged in the petition, and
that he had delivered the due bill to defendant at his
request, upon the promise of defendant to take care of
him during his natural life, but in all important mat-
ters he was contradicted by defendant, and especially
with respect to the execution of the due bill, and the
purchase of the lot in Mexico which plaintiff claimed
that defendant bought for them jointly.   Defendant
testified that he never at any time executed to plaintiff
a due bill for $750, but that at one time when plaintiff
left his home and refused to longer live with him he
executed to him his note for $75 which he afterward
paid, and that he had accounted to his father for every
cent that he had ever received for him from any and
all sources.

 This case belongs to that class in which this court
as a rule defers very much to the finding and conclu-
sions reached by the trial court.   In *Snell v. Harrison*,
83 Mo. 651, it was held that, in equity cases where the

evidence is oral, the finding of the chancellor will be deferred to by the Supreme Court unless he has manifestly disregarded the evidence. *Sharpe v. McPike*, 62 Mo. 300; *Hodges v. Black*, 76 Mo. 537; *Royle v. Jones*, 78 Mo. 403; *Broughton v. Brand*, 94 Mo. 160; *Erskine v. Loewenstein*, 82 Mo. 301; *Hard v. Foster*, 98 Mo. 297; *Benne v. Schnecko*, 100 Mo. 250. While the rule thus announced is not an absolute one it is usually adhered to, and departed from only in case the conclusion reached is manifestly erroneous, and the facts disclosed by the record in the case at bar, furnish no exception to that general rule. In Beach's Modern Equity Practice, section 973, it is said: "Findings of fact in an equity case will not be set aside on appeal unless clearly in conflict with the weight of the evidence upon which they were made." The only direct evidence adduced on the trial was very conflicting, but the trial court was afforded an opportunity, which we are not, of meeting the witnesses face to face, and of observing their demeanor while testifying, thus enabling him the better to determine their truthfulness and the weight to which their testimony was entitled, and he having found in favor of defendant we are inclined to defer to that finding. We accordingly affirm the judgment. GANTT, P. J., and SHERWOOD, J., concur.