**Keena SLEDGE, Plaintiff-Respondent,**

v.

**TOWN & COUNTRY TIRE CENTERS, INC., Defendant-Appellant.**

**No. 45181.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 10, 1983.

Motion for Rehearing and/or Transfer
Denied July 6, 1983.

Anthony F. Vaiana, Clayton, for defendant-appellant.

Leonard P. Cervantes, St. Louis, for plaintiff-respondent.

SMITH, Judge.

Defendant, Town and Country Tire Centers, Inc., appeals from a judgment against it for personal injuries sustained by plaintiff as a result of defendant's failure to properly lubricate the rear axle bearings of an automobile in which plaintiff was riding. The jury assessed actual damages of $200,000 and punitive damages of $125,000 which the trial court reduced by remittitur to $150,000 and $75,000 respectively. The plaintiff has also appealed the remittiturs.

The evidence supported a conclusion that defendant, in replacing the rear axle bearings of a vehicle owned by Edward Johnson and driven principally by his son Michael, failed to pack at least the right bearings with grease. The improper lubrication of the bearings, caused excessive heating of the axle which in turn resulted in the axle breaking and the automobile leaving the highway and crashing into a signpost. Plaintiff, returning to college in Dallas, Texas, was a passenger in the vehicle driven by Michael Johnson. The accident occurred near Claremore, Oklahoma.

Defendant's first two contentions of error concern venue so some recitation of the procedural history of the case is required. Plaintiff was a resident of St. Louis City. Michael Johnson and Town and Country were residents of St. Louis County. On December 15, 1978, plaintiff filed her petition in the City of St. Louis against Michael Johnson only. The Sheriff of St. Louis returned the summons *non est* on January 22, 1979. On June 28, plaintiff filed her first amended petition against Johnson and defendant Town and Country.[1] Service on defendant was made in St. Louis County on July 11. Instructions were given to serve Johnson at a residence in the City. The alias summons on Johnson was returned *non est* on August 23. Pluries summons on Johnson was served September 21 by delivery to him in the Sheriff's office in the City. On October 10, defendant's motion to dismiss for improper venue was granted without prejudice. On November 27, Johnson filed his third-party petition against defendant seeking apportionment and indemnity pursuant to *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo. banc 1978). In December, the third-party petition and summons were served on defendant in St. Louis County and in January 1980, defendant filed its answer to the third-party petition. In February, plaintiff filed her second amended petition against Johnson and defendant. This was served on defendant in St. Louis County in May and promptly invoked a motion to dismiss for improper venue. That motion was denied. Denial of the last mentioned motion forms the basis for defendant's first claim of error.

■ When suit is brought against a corporation and an individual, Sec. 508.010 RSMo. 1978, the general venue statute rather than Sec. 508.040, the corporation venue statute, is applicable. *State ex rel. Turnbough v. Gaertner,* 589 S.W.2d 290 (Mo. banc 1979); *State ex rel. Allen v. Barker,*

---

1. Hereinafter "defendant" will refer to Town and Country.

581 S.W.2d 818 (Mo. banc 1979) [2–7]. Sec. 508.010 provides in applicable part:

"Suits instituted by summons shall, except as otherwise provided by law, be brought:

(1) When the defendant is a resident of the state, either in the county within which the defendant resides, or in the county within which the plaintiff resides, and the defendant may be found;

(2) When there are several defendants, and they reside in different counties, the suit may be brought in any such county; . . . .[2]

◼ In *State ex rel. Bartlett v. McQueen,* 361 Mo. 1029, 238 S.W.2d 393 (Mo. banc 1951), the court held that where the suit is brought in the county of plaintiff's residence against more than one defendant residing in a different county venue as to each defendant is proper only if each is "found" in the county of plaintiff's residence. In *State ex rel. Kissinger v. Allison,* 328 S.W.2d 952 (Mo.App.1959), the court upheld venue as to any defendant "found" in plaintiff's county even though other defendants were not "found" therein making venue as to them improper pursuant to *McQueen, supra.* From this we observe that venue as to Johnson was proper and venue of plaintiff's first amended petition against defendant was improper. Defendant's first motion to dismiss for improper venue was properly granted.

We turn then to the effect of Johnson's third-party petition. In *State ex rel. Garrison Wagner Co. v. Schaaf,* 528 S.W.2d 438 (Mo. banc 1975) the court held ". . . that in third-party practice it need not be shown that venue requirements have been independently complied with but that such may rest on venue properly shown in the original case . . . ." Venue over defendant on Johnson's third-party claim was proper under *Garrison Wagner.* Defendant does not contend otherwise.

We now reach defendant's contention that plaintiff's second and third amended petitions against defendant are not ancillary as was the third-party claim in *Garrison Wagner* and that case does not support venue as to defendant on plaintiff's claim against defendant. Defendant relies upon *State ex rel. Turnbough v. Gaertner, supra,* which held that joinder of two or more separate causes of action pursuant to Rule 52.05(a) does not create venue as to defendants for whom venue would not have existed without joinder. This decision was based upon Rule 51.01 which provides that the rules of civil procedure shall not be construed to extend or limit the jurisdiction of the courts or the venue of civil actions. Defendant contends that the same rationale applies to Rule 52.11 allowing plaintiff to assert a claim against a third-party defendant.

◼ We find neither *Garrison Wagner* nor *Turnbough* directly decisive of the matter before us nor have we found any case in this state which is.[3] *Garrison Wagner* was based in part on federal cases holding that the action by the third-party plaintiff against the third-party defendant for indemnity was "ancillary" to the main action between plaintiff and defendant-third-party plaintiff. In *Garrison Wagner* no attempt had been made by plaintiff to assert a direct action against the third-party defendant, as is the case here. In *Turnbough* no third-party action was involved. Plaintiff's action was directly against the nonresident defendant for injuries sustained in an accident separate and distinct from the accident involving the other defendant. Joinder was permissible because the second accident aggravated injuries sustained in the first. *See Hager v. McGlynn,* 518 S.W.2d 173 (Mo.App.1974). The *Turnbough* court referred to *Garrison Wagner* in a footnote and characterized that opinion as

---

**2.** Paragraph (6) of 508.010 provides that in tort actions the suit may be brought in the county where the cause of action accrued. That paragraph has no application here.

**3.** *See, Stowers Equipment Rental Co. v. Brown,* 370 So.2d 1248 (Fla.App.1979); *Thompson v. United Artists Theatre Circuit, Inc.* 43 F.R.D. 339 (D.C.N.Y.1967) (upholding venue); *Habina v. M.A. Henry Co.,* 8 F.R.D. 52 (D.C.N.Y.1948) (rejecting venue).

holding that third-party proceedings were "ancillary" to the principal action. *Garrison Wagner* was held not to require a ruling in favor of plaintiff because Count II in *Turnbough* was not ancillary to Count I. The case before us combines features of both *Garrison Wagner* and *Turnbough.* Like the former it arises from third-party proceedings; like the latter it involves two counts asserting separate and independent acts of negligence. Unlike *Turnbough,* however, the separate claims of negligence purportedly coalesced into a single accident resulting in a single injury.

In *Dan Ficken Pools, Inc. v. Flynn,* 592 S.W.2d 213 (Mo.App.1979) [3], we stated that the purpose of the venue statute is to provide a convenient, logical and orderly forum for litigation. With that as our guide, we are unable to conclude that the venue here was improper. The question of defendant's negligence was properly before the court on Johnson's third-party claim. Trial of all issues in the same forum, including plaintiff's claim against defendant, avoids multiplicity and provides an orderly and logical forum for the litigation. It imposes no greater inconvenience upon defendant to try its liability to both plaintiff and Johnson in that forum than to try its liability to Johnson alone. We must concede that plaintiff's claim against defendant is not "ancillary" to the claim against Johnson as that term is commonly used. But we are not convinced that "ancillary" was utilized by the court in *Garrison Wagner* and *Turnbough* solely in the sense of "secondary." We think rather it was utilized to identify the situations within the purpose of third-party practice, namely:

> "... to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence to obtain consistent results from identical or similar evidence and to accomplish ultimate justice for all concerned with economy of litigation and without prejudice to the rights of another." *State ex rel. Laclede Gas Company v. Godfrey,* 468 S.W.2d 693 (Mo.App.1971) [5], quoted in and approved in *State ex rel. Garrison Wagner Co. v. Schaaf, supra,* [1].

The situation in *Turnbough* presents an entirely different consideration. There the court was involved with permissive joinder and the induction of the non-resident into the suit was solely for the convenience of the plaintiff. The non-resident defendant's presence was not required to determine the liability of the other defendant nor to adjudicate that party's rights vis-a-vis the non-resident. *See, State ex rel. Retherford v. Corcoran,* 643 S.W.2d 844 (Mo.App.1982). While certain judicial economy would be involved, it could only be accomplished through an inconvenience to the non-resident defendant. Rule 51.01 specifically prevents construction of the rules to eliminate the statutorily established "convenience" of venue. *Garrison Wagner* establishes that the "ancillary" venue of third-party practice does not run afoul of the venue statutes and consequently Rule 51.01 does not apply here.

We are cognizant that our ruling upholding venue can result in abuse of third-party practice to allow "forum shopping." One remedy is the next point to be discussed. Another is the discretion vested in the trial court in permitting the filing of a third-party petition. *See, State ex rel. Green v. Kimberlin,* 517 S.W.2d 124 (Mo. banc 1974) [1, 2]; *State ex rel. Garrison Wagner v. Schaaf, supra,* [2]. We find no improper venue here.

Defendant next contends that the trial court erred in refusing to allow it to present evidence of collusive use of third-party practice to achieve venue. Defendant made the request of the trial court immediately prior to trial. It stated that it first discovered the collusion a few days earlier at a pre-trial conference. Its offer of proof delineated facts from which, if true, a court could have found that plaintiff and Johnson entered into certain agreements intended to place venue in the City of St. Louis through use of Johnson's voluntary presence for service and his subsequent use of third-party practice. As her part of the agreement, it was alleged that plaintiff agreed she would not ultimately submit any claim against

Johnson for her injuries.[4] The offer of proof also indicated that part of the agreement was to allow Johnson to assert his personal injury claim against defendant in St. Louis City, a venue not otherwise available to him.[5]

We are cited to no cases in this state, and have found none, which deal with collusive or fraudulent utilization of third-party practice. But we find the collusive or fraudulent joinder cases analogous. Those cases recognize fraudulent joinder in two situations—(1) where the pretensive nature of the joinder appears on the face of the pleadings and (2) where there is in fact no cause of action against the resident defendant. *Diehr v. Carey*, 238 Mo.App. 889, 191 S.W.2d 296 (1945) [5, 6]. The first situation is not present here; the plaintiff's pleadings state a cause of action against Johnson. Technically the second also does not apply for there was here a cause of action in fact against Johnson. But the explication by the Court in *Diehr v. Carey, supra,* [5] of the rationale for the fraudulent joinder rule was:

> "It would be a very dangerous doctrine, indeed, and one utterly destructive of the valuable rights conferred upon litigants by [predecessor to Sec. 508.010] if this court should countenance a practice whereby a plaintiff could, by stating a paper case against the resident defendant, force a non-resident to submit to the jurisdiction of the court, when in truth and in fact the plaintiff had no cause of action against the resident defendant, either because no factual basis could exist to support an honest belief on plaintiff's part that he had a cause of action against the resident defendant, or that upon the conceded facts, as in the case at bar, no action could be brought against him. When the issue is raised by a proper plea, as was done in the instant case, the court should look behind the mere ingenuity of pleading, and scrutinize the facts to as-

certain the propriety of the joinder of the defendants."

We find it no less dangerous and destructive to permit collusive use of third-party practice to deny a defendant a venue to which he is statutorily entitled. If the facts evidence that the suit against Johnson, service of him and his use of third-party practice was solely for that purpose it is not to be countenanced.

Here the offer of proof asserts that an agreement existed between Johnson and plaintiff to utilize Johnson's voluntary appearance in the City to obtain venue over defendant for purposes of both plaintiff's and Johnson's claim against defendant and that plaintiff would seek no judgment against Johnson. Such allegations are sufficient to raise the issue of collusive use of third-party practice. When such an issue is raised, defendant is entitled to an opportunity to present evidence to support it. *Rakestraw v. Norris*, 478 S.W.2d 409 (Mo.App. 1972) [2–8]; *Hutchinson v. Steinke*, 353 S.W.2d 137 (Mo.App.1962) [1]; *Diehr v. Carey, supra,* [7]. The trial court erred in refusing to allow defendant an opportunity to prove its allegations. We express no opinion on the merits of defendant's contention and fully realize the very heavy burden it bears in establishing collusive use of third-party practice. *See, Rakestraw v. Norris, supra.* We hold only that it is entitled to the opportunity to make such proof.

Nor do we find that the request for such opportunity was untimely. The previous challenge to venue by defendant was not on grounds of collusion but on purely legal grounds. Defendant asserted that it discovered the alleged collusion as a result of statements made at a pre-trial conference shortly before trial. Allegations of collusion should not be lightly made and we cannot hold that defendant's failure to raise the issue prior to the time it did was a waiver of the issue. It asserted the impropriety of venue throughout and raised the

---

4. Plaintiff ultimately dismissed her claim against Johnson after the trial court denied Johnson's motion for directed verdict.

5. The record is not clear but there are indications therein that Johnson did assert such a claim.

claim of collusiveness at the earliest opportunity after discovery. We therefore will remand the case for hearing on the allegations of collusive use of third-party practice.

Because such a hearing may result in a finding of no such collusion, we must address certain other issues. We next direct our attention to defendant's contention that the award of punitive damages is unsupported by the record. We agree. The most recent statement of the basis for punitive damages is found in *Stark v. American Bakeries Co.*, 647 S.W.2d 119 at 123 (Mo. banc 1983):

> "The test to be applied in determining if malice existed as a basis for an award of punitive damages is whether the defendant did a wrongful act intentionally without just cause or excuse. (Citations omitted) To be assessed punitive damages, defendant must not only have intended to perform the act which is ascertained to be wrongful but must have known it was wrongful when he did it."

■ The knowledge of the wrongfulness of the act performed may be supplied by a complete indifference to or conscious disregard for the safety of others such that the actor must be conscious that his action will naturally or probably result in injury. *Sharp v. Robberson*, 495 S.W.2d 394 (Mo. banc 1973). Under these tests the evidence is deficient. Plaintiff bases its argument upon the knowledge of the mechanic that improper lubrication could result in overheating and axle breakage and that with such knowledge he failed to consult a manual which gave the correct method of lubrication of this vehicle. But the only evidence in the record is that the mechanic believed from his experience and from his visual inspection of the axle and bearings that the method he utilized was the correct one. His actual or constructive knowledge

that injury could occur if he was negligent was an element of defendant's duty. It does not supply the knowing violation of that duty necessary to support punitive damages. The mechanic utilized a method he believed to be correct; he was negligent in so doing but he did not knowingly act improperly nor was he indifferent to or in conscious disregard of plaintiff's safety.[6]

■ We have examined defendant's remaining points and find they are either rendered moot by our decision on the punitive damage issue or involved rulings within the discretion of the trial judge in which no abuse of discretion is shown or which involved no error. We have also reviewed defendant's claim of excessiveness and find none. On plaintiff's appeal, we are unable to find an abuse of the trial court's discretion in weighing the evidence of injury and so find no error in the remittitur ordered.

Judgment for punitive damages reversed. Cause remanded for hearing on defendant's claim of collusive venue. Trial court is directed to enter judgment for $150,000 actual damages if defendant fails to establish improper collusion to create venue, and to set aside the judgment and dismiss the case if such improper collusion is found.

PUDLOWSKI, P.J., and KELLY, J., concur.

---

6. We do not find plaintiff's authority, *Smith v. Courter*, 575 S.W.2d 199 (Mo.App.1978) applicable nor persuasive on the matter before us. It is difficult to tell from that opinion upon what basis the court upheld the punitive award, although it would appear to be that the doctor consciously failed to make the examination he was employed to make and misrepresented that he did.